**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| OMAR HERNANDEZ CARRASQUILLO | Civil No. 21-01506 |
| Plaintiff | |
| v. | Re: Violations of the Fair Debt Collection Practices Act. |
| CICA COLLECTION AGENCY, INC. | |
| Defendant | |

## CLASS ACTION COMPLAINT

**COMES NOW** Plaintiff, **Omar Hernandez Carrasquillo**, on behalf of himself and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, all others similarly situated through the undersigned counsel, and before this Honorable Court respectfully state, allege, and pray as follows:

## I.     INTRODUCTION

1.     This action seeks redress for the unlawful and deceptive collection practices committed by the Defendants in connection with their efforts to collect on a consumer debt against Plaintiff and other similarly situated (coupled, "Plaintiffs").   Plaintiffs allege that Defendant violated the Fair Debt Collection Practice Act ("FDCPA") by engaging in unlawful and deceptive collection practices. Plaintiffs request declaratory and injunctive relief, as well as monetary, and punitive and actual damages based on violations of 15 U.S.C. §1692.

## II.     JURISDICTION AND VENUE

2.     Jurisdiction is invoked under the provision 28 U.S.C. §1331 and 15 U.S.C. §1692(k)(d).

3. Venue is proper in this District because all the events and omissions giving rise to the claims asserted in the Complaint occurred within this judicial district. In addition, Defendant is domiciled in this District and does business in this District.

## III.   THE PARTIES

4. Plaintiff, **Omar Hernandez Carrasquillo**, is a natural person and a citizen of the Commonwealth of Puerto Rico. At all relevant times Plaintiff has resided in the municipality of Caguas, Puerto Rico. Plaintiff is a "consumer" as such term is defined by the FDCPA.

5. Defendant, **CICA Collection Agency, Inc.** (hereinafter referred as "**CICA**" or "**Defendant**") is a for profit corporation registered to do business in the Commonwealth of Puerto Rico. CICA is also domiciled in San Juan, Puerto Rico with a designated office address of: 403 Calle del Parque Suite 3, San Juan, PR 00912. CICA is a third-party collection agency that utilizes the instrumentalities of interstate commerce (i.e., telephone, e-mail, texts, US Mail, etc.) to conduct the business of collecting debts. On behalf of clients, CICA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. CICA is a debt collector as such term is defined in 15 U.S.C. §1692a(6).

6. Defendants, **Insurance Companies ABC**, are the insurance companies of the CICA in this Complaint who are liable for the acts against the Plaintiff and are therefore responsible for the damages and acts alleged in this Complaint.

7. Defendants, **John Doe and Jane Doe,** are fictitious names for unknown persons who participated in the act and omissions against Plaintiff and/or who are successors of Defendant, all responsible for the damages suffered by the Plaintiff.

## IV.   THE FACTS

8. Plaintiffs re-allege each and every previous allegation as if fully established herein.

9.     Plaintiffs are all natural persons.

10.     Allegedly, on November 26, 2007, Plaintiff entered into a contract for telephone and communication services with Claro Puerto Rico (hereinafter referred as the "Consumer Debt").

11.     The Plaintiff, as a natural person and allegedly obligated to pay a Consumer Debt, is a 'Consumer' as such term is defined by 15 U.S.C. §1692a(3).

12.     The Consumer Debt was based on a contract for phone services for Plaintiff's personal, household, or family purposes; meaning, that the alleged debt was incurred for the benefit of Plaintiff as well as his family and his household.

13.     The Consumer Debt is a "debt" as such term is defined by 15 U.S.C. §1692a(5) as it was incurred for personal, family, or household purposes.

14.     The FDCPA defines the term "debt collector," amongst other definitions, as including: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another". *See*, 15 U.S.C. §1692a(6).

15.     CICA is a collection agency that utilizes the instrumentalities of interstate commerce (i.e., telephone, e-mail, texts, US Mail, etc.) to conduct the business of collecting debts.

16.     On behalf of clients, CICA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

17.     CICA is a "debt collector" as such term is defined in 15 U.S.C. §1692a(6).

18.     On September 27, 2019, Plaintiff sought and obtained bankruptcy protection by and through the filing of a voluntary petition pursuant to the Bankruptcy Code of the United States.

The bankruptcy case was catalogued as bankruptcy case number 19-05560-MCF (hereinafter referred to as the "Bankruptcy Case").

19.     The Consumer Debt, i.e., the Plaintiff's alleged debt to Claro, was duly listed in the Plaintiff's bankruptcy schedules. *See*, <u>Schedule E/F</u>, Dk. #68 of the Bankruptcy Case, at Question #4.7, pg. #5.

20.     By and through Automatic Stay provisions of the Bankruptcy Code (i.e., 11 U.S.C. §362), the alleged Consumer Debt (i.e., the alleged debt owed to Claro), was neither due nor collectable from Plaintiff.

21.     On July 15, 2020, the Clerk of the Bankruptcy Court notified Claro of Plaintiff's bankruptcy proceeding.

22.     Thereafter, the Clerk of the Bankruptcy Court and the Chapter 7 Trustee notified Claro of the bankruptcy proceeding on multiples occasions.

23.     Sometime before October 19, 2020, Claro retained Defendant to collect on the alleged Consumer Debt.

24.     Upon information and believe, on or before October 19, 2020, Claro informed Defendant that Plaintiff was protected from collection by the Automatic Stay Order of the bankruptcy court in the Bankruptcy Case.

25.     Despite the Bankruptcy Case, and the fact that pursuant to Section 362 of the Bankruptcy Code the Consumer Debt was neither due or owing, on or about October 19, 2020, CICA mailed a collection letter to Plaintiff demanding payment on the Consumer Debt (hereinafter referred to as the "Demand Letter").

26. At the time CICA mailed the Demand Letter to the Plaintiff, CICA knew, or should have known, of the Bankruptcy Case and that the Plaintiff was under the protection of the Bankruptcy Code.

27. At the time the Demand Letter was mailed to the Plaintiff, CICA knew, or should have known, that Plaintiff was represented by Counsel; thus, CICA was forbidden from communicating with Plaintiff.

28. The Demand Letter is a "communication" as such term is defined in 15 U.S.C. §1692a(2).

29. The Demand Letter was sent through means of interstate commerce; namely, via first-class United States Mail.

30. The Demand Letter identified the Plaintiff as a "Consumer," as such term is defined under the FDCPA.

31. The Demand Letter was addressed to Plaintiff directly; not Plaintiff's counsel.

32. CICA identified itself as a 'debt collector' in the Demand Letter; *to wit*, a "collection agency."

33. The Demand Letter sought the collection for the Consumer Debt in the amount of $872.60.

34. The Demand Letter falsely alleged that the Consumer Debt was due and payable.

35. The Demand Letter falsely threatened impending legal action against the Plaintiff.

36. The Demand Letter did not, **clearly and effectively**, identify CLARO PUERTO RICO as the "creditor to whom the [alleged] debt is owed."

37.     The Demand Letter did not, **clearly and effectively**, advise Plaintiff that if he did not dispute the Consumer Debt within thirty (30) days, from the day of receipt of the Demand Letter, **only Defendant** would deem the Consumer Debt **valid**.

38.     The Demand Letter did not, **clearly and effectively**, advise Plaintiff that if he disputed the debt in writing within the 30-day period, **from receipt of the Demand Letter**, Defendant would have to provide him with verification of the debt.

39.     As a result of the false representation and deceptive collection tactics in the Demand Letter, as well as the threat of impending legal action, Plaintiff was forced to spend time and money to visit Plaintiff's counsel and retain counsel to review the Demand Letter to determine if the monies alleged in the Demand Letter or the legal action threatened therein were permissible.

### V.     COUNT I - VIOLATION OF *15 U.S.C. § 1692e*

40.     Plaintiff re-alleges each and every previous allegation as if fully established herein.

41.     Plaintiff brings Count I in his own personal capacity.

42.     Section *1692e,* in its pertinent part, states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> …
> (2) The false representation of—
>      (A) **the character, amount, or legal status of any debt**…
> (3) ……………………………………………………………...;
> (4) …………………………………………………..……………;
> (5) **The threat to take any action that cannot legally be taken** or that is not intended to be taken.
> (6) ……………………………….…………………………..;
> (7) …………………………………….…………………………;
> (8) ……………………………….…………………………;
> (9) ……………………………….…………………………;
> (10) The **use of any false representation** or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

6

43.     The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

44.     Under Section 1692e, a debt collector may not falsely represent "the character, amount, or legal status of any debt," nor may threaten "to take any action that cannot legally be taken." *See*, 15 U.S.C. §§ 1692e(2)(a), (5).

45.     Section 1692e also prohibits the "use [of] any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer". 15 U.S.C. §§ 1692e(10).

46.     "The FDCPA is 'a strict liability statue' and, thus, there is no need for a plaintiff to plead or prove that a debt collector's misrepresentation of a debt obligation was intentional." *See*, Vangorden v. Second Round, Ltd. P'ship, 897 F.3d 433, 437-38(2d Cir. 2018) (citing Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, 875 F.3d 128, 134 (2d Cir. 2017)). "The strict liability standard applies to § 1692e claims." *See*, Wahl v. Midland Credit Mgmt., Inc., 556 F.3d 643, 646 (7th Cir. 2009).

47.     Therefore, a "[d]ebt collectors may not make false claims, period." *See*, Randolph v. IMBS, Inc., 368 F.3d 726, 730 (7th Cir. 2004); *see also*, Valle v. Westhill Exch., LLC, GJH-19-2304 (D. Md. Mar. 24, 2021) ("[A] debt collector may violate §1692e even if it unintentionally makes a false statement."); Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 995 (7th Cir 2003) ("[U]nder §1692e ignorance is no excuse."); Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996).

48.     Defendant's false, misleading, and deceptive representations in the Demand Letter violated 15 U.S.C. § 1692e(2)(a), (5), (10).

49.     The allegation in the Demand Letter that the Consumer Debt was due and payable, was false because due to the Automatic Stay provisions of the Bankruptcy Code, collection on the debt was stayed.

50.     The Consumer Debt was neither due nor collectable from Plaintiff by Defendant nor any other party.

51.     Defendant violated Section 1692e(2)(A) because it incorporated a false representation and a mischaracterization of the nature and legal status of the Consumer Debt by attempting to collect from Plaintiff a debt that was legally stayed from collection by the Automatic Stay Order; thus, was neither due nor owing nor demandable.

52.     Defendant violated Section 1692e(5) by threatening to "take any action that cannot legally be taken" to collect a debt because the debt was legally stayed from collection by the Automatic Stay Order; thus, was not actionable.

53.     Defendant violated Section 1692e(5) when it asserted that it was within its "rights to commence a lawsuit against Plaintiff for the collection of monies" because the debt that was legally stayed from collection by the Automatic Stay Order; thus, was not actionable.

54.     From prior to October 19, 2020, and through this date, CICA knew or should have known that legal action could not "legally be taken" to collect the debt alleged in the Demand Letter because of the Automatic Stay provisions of the Bankruptcy Code and the Automatic Stay Order of the Bankruptcy Court.

55.     Defendant violated Section 1692e(10) by using false representations and/or deceptive means to collect, or attempt to collect, the Consumer Debt.  Specifically, Defendant falsely represented that the Consumer Debt was "liquid and demandable."

56.     CICA's false representations, despite knowledge that Plaintiff was protected by the automatic stay, that (a) the alleged Consumer Debt was owing; (b) that Plaintiff faced impending legal action; and (c) communicating such information directly to Plaintiff while blind-siding Plaintiff's counsel, amounts to – as a totality – extreme and outrageous conduct.

57.     The result of CICA's extreme and outrageous conduct, as well as unfair and deceptive actions, lead Plaintiff to mistakenly believe that he needed to pay the Consumer Debt in question – which was not owed - immediately; else, face the legal and financial consequences threatened in the Demand Letter.

58.     As a result of CICA's extreme and outrageous conduct, Plaintiff suffered tangible and intangible injuries.

59.     Amongst Plaintiff's tangible injuries, Plaintiff: (a) Plaintiff spent time and money to engage counsel and to review the allegations in the Demand Letter; (b) opportunity costs related to time missed from work due to the allegations in the Demand Letter; (c) severe emotional harm that resulted from Plaintiff's believe that notwithstanding his investment in counsel and bankruptcy filing, he was still subject to the impending financial and legal harm threatened in the Demand Letter; as well as (d) as physical ailments like headaches, and others resulting from the allegations in the Demand Letter.

60.     Additionally, Plaintiff suffered intangible injuries.  Amongst others, the Demand Letter, in violation of the FDCPA, exposed Plaintiff to the risk of paying a debt which he did not owe; precisely, the type of harm Congress intended to prevent via the FDCPA.

61.     As a result of CICA's conduct, Plaintiff is entitled to an award of statutory damages pursuant to *15 U.S.C. §1692k.*

62.     As a result of CICA's conduct, Plaintiff is entitled to an award of costs and attorney fees pursuant to *15 U.S.C. §1692k.*

## VI.     <u>COUNT II - VIOLATION OF *15 U.S.C. § 1692c*</u>

63.     Plaintiff re-alleges each and every previous allegation as if fully established herein.

64.     Plaintiff brings Count II in his own personal capacity.

65.     Section *1692c(a)(2),* in its pertinent part, states:

**(a) "COMMUNICATION WITH THE CONSUMER GENERALLY**

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, <u>a debt collector may not communicate with a consumer in connection with the collection of any debt—</u>

**(2)** <u>if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address,</u> unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer …"

*See*, 15 U.S.C. §1692c(a).

66.     The FDCPA prohibits debt collectors from communication with a consumer when the debt collector knows or can readily ascertain that the consumer is represented by counsel.  See, 15 U.S.C. § 1692c(a)(2).

67.     A debt collector's knowledge of the consumer's legal representation may be actual; that knowledge of legal representation can also be imputed.  *See*, <u>Micare v. Foster & Garbus</u>, 132 F. Supp. 2d 77 (N.D.N.Y. 2001) (unless debt collector had procedure in place by which it asked creditors whether debtor was represented by counsel and creditor suppressed information, creditor's knowledge may be imputed to debt collector).

68.	On September 27, 2019, Plaintiff sought and obtained bankruptcy. *See*, Bankruptcy Case.

69.	The Bankruptcy Case file confirmed that Plaintiff was represented by Att. Jesus E. Batista Sanchez, of The Batista Law Group, PSC.

70.	On July 15, 2020, the Clerk of the Bankruptcy Court notified Claro of Plaintiff's bankruptcy proceeding.

71.	The information notified upon Claro on July 15, 2020 included information which informed that Plaintiff was represented by counsel with respect to the Consumer Debt.

72.	Thereafter, the Clerk of the Bankruptcy Court and the Chapter 7 Trustee notified Claro of the bankruptcy proceeding, and concurrently of Plaintiff's legal representation, on multiples occasions.

73.	The Demand Letter violated 1692c(a)(2) because Defendant communicated with Plaintiff while Defendant knew that Plaintiff was represented by counsel.

74.	CICA's false representations, despite knowledge that Plaintiff was protected by the automatic stay, that (a) the alleged Consumer Debt was owing; (b) that Plaintiff faced impending legal action; and (c) communicating such information directly to Plaintiff while blind-siding Plaintiff's counsel, amounts to – as a totality – extreme and outrageous conduct.

75.	The result of CICA's extreme and outrageous conduct, as well as unfair and deceptive actions, lead Plaintiff to mistakenly believe that he needed to deal with CICA, and the financial and legal threats in the Demand Letter, directly notwithstanding having retained counsel with respect to the Consumer Debt.

76.	As a result of CICA's extreme and outrageous conduct, Plaintiff suffered tangible and intangible injuries.

77.     Amongst Plaintiff's tangible injuries: (a) Plaintiff spent time and additional attorney fees to engage counsel to review and address, for a second time, the debt alleged in the Demand Letter; (b) opportunity costs related to time missed from work due to the allegations in the Demand Letter; (c) severe emotional harm that resulted from Plaintiff's believe that notwithstanding his investment in counsel and bankruptcy filing, he was still subject to the impending financial and legal harm threatened in the Demand Letter; as well as (d) as physical ailments like headaches, and others resulting from the allegations in the Demand Letter.

78.     Additionally, Plaintiff suffered intangible injuries.  Amongst others, the Demand Letter, in violation of the FDCPA, exposed Plaintiff to the risk of paying a debt which he did not owe; precisely, the type of harm Congress intended to prevent via the FDCPA.

79.     As a result of CICA's conduct, Plaintiff is entitled to an award of statutory damages pursuant to *15 U.S.C. §1692k.*

80.     As a result of CICA's conduct, Plaintiff is entitled to an award of costs and attorney fees pursuant to *15 U.S.C. §1692k.*

## VII.     COUNT III – VIOLATION OF SECTION 1692g

81.     Plaintiff re-alleges each and every previous allegation as if fully established herein.

82.     Plaintiff brings Count III on his own behalf and on behalf of others similarly situated.

83.     Section 1692g expressly requires all debt collectors to communicate certain information to every consumer.  Pursuant to *15 U.S.C §1692g(a)* the Defendant must provide Plaintiff, amongst others, with the following information:

> (a)  Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt

collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing-

(2) The name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, **is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification** or judgment will be mailed to the consumers by the debt collector;

*See, 15 U.S.C §1692g(a)* (Emphasis added).

84.     This Section 1692g(a) language, "commonly referred to as a 'validation notice,' gives the consumer the information necessary to challenge the debt allegedly owed before making payment." *See*, Russell v. Equifax A.R.S., 74 F.3d 30, 32-33 (2d Cir. 1996).

85.     It is settled that the "[Seventh] and other circuits have long interpreted *§1692g* to require that the mandatory disclosures be made so that they would be clearly understood by unsophisticated debtors." *See*, Steffek v. Client Servs., Inc. 948 F.3d 761 (7th Cir. 2020).

86.     Accordingly, "[i]t is not enough for a debt collection agency simply to include the property debt validation notice in a mailing to a consumer [rather] Congress intended that such notice be clearly conveyed." *See*, Graziano v. Harrison, 950 F.2d 107, 111 (3rd Cir. 1991).

87.     A letter in the form represented by **Exhibit A** was the 'initial communication' utilized by Defendant (hereinafter, the "Initial Communication").

88.     The Initial Communication is a template and a form letter which - in identical form and substance - is mailed to all consumers from whom Defendant attempts to collect as an 'initial communication.'

89.     Pursuant to the mandates of 1692g(a)(2) of the FDCPA, Defendant's Initial Communication is obligated to clearly convey to Plaintiff "[t]he name of the creditor to whom the debt is owed."

90.     Pursuant to the mandates of 1692g(a)(3) of the FDCPA, Defendant's Initial Communication was obligated to clearly convey to Plaintiff that Plaintiff had the right to dispute the validity of the debt during the period commencing on the date of receipt of the Initial Communication and ending on the 30th day thereafter.

91.     The information must be conveyed in a manner which is neither confusing nor contradictory. *See*, <u>Bryan v. Credit Control, L.L.C.</u>, 954 F.3d 576 (2d Cir. 2020) ("Even if debt collector conveys the required information, the collector nonetheless violates Section 1692g if it conveys that information in a confusing or contradictory fashion as to cloud the required message with uncertainty.").

92.     Pursuant to the mandates of 1692g(a)(4) of the FDCPA, Defendant's Initial Communication was obligated to clearly convey to Plaintiffs that the period to dispute the debt, under 1692g(a)(4), expired on the 30th day **after receipt** of the Initial Communication.

93.     Defendant's Initial Communication failed to clearly convey to Plaintiff – as required by 1692g(a)(2) of the FDCPA, "[t]he name of the creditor to whom the debt is owed."

94.     The Initial Communication refers to an entity, CLARO PUERTO RICO, as Defendant's "client." To this date, Defendant has failed to identify the creditor to whom the debt is owed as required by Section 1692g(a)(2). *See*, <u>Bryan v. Credit Control, L.L.C.</u>, 954 F.3d 576 (2d Cir. 2020) (where the collector merely refers to creditor as the debt collector's "client" without identifying it as the creditor does not comply with Section 1692g(a)(2)).

95. Defendant's Initial Communication failed to clearly convey to Plaintiff – as required by the 1692g(a)(3) of the FDCPA – that Plaintiff had the right to dispute the validity of the debt during the period commencing on the date of receipt of the Initial Communication and ending on the 30th day thereafter.

96. The Initial Communication, incorrectly, attempted to limit and circumscribe Plaintiff's Section 1692g(a)(3) rights by demanding that Plaintiff: (a) have had (i.e., past-tense); (b) "presented", (c) an "objection" within the referenced 30-day period.

97. By claiming that a "dispute" under Section 1692g(a)(3) be (a) "presented," by and through the form of an (b) "objection;" Defendant created additional barriers to the Plaintiff's exercise of his Section 1692g(a)(3) rights.

98. The Initial Communication limited and circumscribed Plaintiff's Section 1692g(a)(3) rights by demanding that any dispute or objection be present**ed** (i.e., past-tense) within the referenced 30-day period.

99. By demanding that any dispute or "objection" be completed or "presented" within the referenced 30-day period Defendant attempted to shorten and limit the 30-day period to dispute a debt created by Congress. *See*, Diaz v. Residential Credit Solutions, Inc., 965 F. Supp. 2d 249, 261 (E.D.N.Y. 2013)(by requiring the notice to be received by the debt collector within thirty days, the validation notice shortens the period during which the recipient may seek verification of the debt; therefore, the validation notice violates the FDCPA because it contradicts the Plaintiff's rights under §1692g).

100. Defendant's Initial Communication failed to clearly convey to Plaintiff, as required by Section 1692g(a)(4), that the period to dispute extended until the 30th day, **after receipt**, of the Initial Communication.

101.    The Initial Communication merely informed Plaintiff that he needed to notify Defendant within the 30-day period to exercise Plaintiff's Section 1692g(a)(4) rights; without specifically informing Plaintiff that such period did not begin to accrue until receipt of the Initial Communication.

102.    By failing to specify that the 30-day period, under 1692g(a)(4), did not begin to accrue until receipt of the Initial Communication, Defendant attempted to shorten and limit the 30-day period to dispute a debt created by Congress. *See*, <u>Diaz v. Residential Credit Solutions, Inc.</u>, 965 F. Supp. 2d 249, 261 (E.D.N.Y. 2013) (by requiring the notice to be received by the debt collector within thirty days, the validation notice shortens the period during which the recipient may seek verification of the debt; therefore, the validation notice violates the FDCPA because it contradicts the Plaintiff's rights under §1692g).

103.    The Initial Communication violated 15 U.S.C. §§§ 1692g(a)(2); 1692g(a)(3); and 1692g(a)(4), respectively.

104.    CICA's violation of Section 1692g by (a) failing to clearly convey mandatory information pursuant to 1692g(a)(2); (b) failing to clearly convey mandatory information pursuant to 1692g(a)(3); and (c) failing to clearly convey mandatory information pursuant to 1692g(a)(4), amounts to – as a totality – extreme and outrageous conduct.

105.    The result of CICA's extreme and outrageous conduct, as well as unfair and deceptive actions, lead Plaintiff to mistakenly believe that he could not dispute the debt without the assistance of counsel because the process was via formal proceeding in which an "objection" needed to be "presented."

106. The result of CICA's extreme and outrageous conduct, as well as unfair and deceptive actions, lead Plaintiff to mistakenly believe that he could not dispute the debt, in order to receive verification documents, after the 30th day from the day the letter was sent.

107. As a result of CICA's extreme and outrageous conduct, Plaintiff suffered tangible and intangible injuries.

108. Amongst Plaintiff's tangible injuries: (a) Plaintiff suffered severe emotional harm that resulted from Plaintiff's believe that he would be subject to an impending legal action unless he invested in counsel to launch the formal "presentment" of an "objection" that was suggested by the Initial Communication; (b) Plaintiff suffered economic harm in the cost of time and money invested researching how to avoid the impending legal and economic consequences suggested by the Demand Letter.

109. But for the confusing and contradictory validation notice in the Initial Communication, Plaintiff would have known that a debt could be disputed via a simple expression, thus, saving himself the severe emotional distress as well as the economic harm of researching and investigating alternatives.

110. Additionally, Plaintiff suffered intangible injuries. Amongst others, the confusion and contradiction created by the invalid Validation Notice in the Initial Communication exposed Plaintiff to the risk of having to pay a debt without having the opportunity to disputes the same; precisely, the type of harm Congress intended to prevent via the FDCPA.

111. As a result of CICA's conduct, Plaintiff is entitled to an award of statutory damages pursuant to *15 U.S.C. §1692k.*

112. As a result of CICA's conduct, Plaintiff is entitled to an award of costs and attorney fees pursuant to *15 U.S.C. §1692k.*

## VIII.  COUNT IV – VIOLATION OF 15 U.S.C. §1692e

113.  Plaintiff re-alleges each and every previous allegation as if fully established herein.

114.  Plaintiff brings Count IV on her own behalf and on behalf of others similarly situated

115.  *15 U.S.C. § 1692e(11)* provides as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> …
> (11)  The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

> *See,* 15 U.S.C. § 1692e(11).

116.  Section 1692e(11) incorporate two separate and distinct mandates upon debt collectors. First, in the "***initial communication***" the debt collector must disclose that: (a) the communicating party is a "debt collector," and (b) the communicating party "is attempting to collect a debt and that any information will be used for that purpose". *See*, 15 U.S.C. § 1692e(11), *supra*. Second, in any "***subsequent communications***" the debt collector must disclose that the "communication is from a debt collector". Id.

117.  The FDCPA mandates strict compliance with its disclosure requirements of 1692e(11). *See*, <u>Masciarelli v. Boudreau & Associates</u>, 529 F.Supp.2d 183 (D. Mass. 2007) ("a collection agent must follow the disclosure requirement of identifying himself as a debt collector in all communication...").

18

118.     Pursuant to the mandates of 1692e(11) of the FDCPA, Defendant was obligated to disclose to Plaintiff, clearly and effectively, that it was a "debt collector."

119.     The "Initial Communication" failed to, clearly and effectively, disclose to Plaintiff the purpose and role of Defendant as "debt collector" seeking to "collect on a debt."

120.     Defendant's disclosure was clouded by Defendant's assertion to Plaintiff that it was willing to act as an "intermediary" between Plaintiff and Defendant's client.

121.     Defendant's assertion that it was an intermediary was false and contradictory.

122.     Defendant, who alleged to be employed by CLARO PUERTO RICO, could not legally act as a legal intermediary for the benefit of Plaintiff.

123.     Defendant's failure to clearly and effectively convey, without confusion or contractions, its identity as a "debt collector" violated Section 1692e(11).

124.     CICA's violation of Section 1692e(11), in addition to its violation of Section 1692g – as a totality – constituted extreme and outrageous conduct.

125.     The result of CICA's extreme and outrageous conduct, as well as unfair and deceptive actions, lead Plaintiff to mistakenly believe that CICA could work for his benefit by acting as an "intermediary" between Plaintiff and CICA's client.

126.     The result of CICA's extreme and outrageous conduct, as well as unfair and deceptive actions, lead Plaintiff to mistakenly believe that he did not need to dispute the debt, rather, that CICA would help him.

127.     Because of CICA's violation of Section 1692e(11), Plaintiff did not dispute a debt which he did not owe.

128.     As a result of CICA's extreme and outrageous conduct, Plaintiff suffered tangible and intangible injuries.

129. Amongst Plaintiff's tangible injuries: (b) Plaintiff suffered economic harm from not disputing an invalid debt because he was led to believe that CICA would assist as an "intermediary"; and (b) Plaintiff suffered severe emotional harm that resulted from learning, after the dispute period had lapsed, that CICA was not an intermediary but rather a debt collector that worked only for the benefit of Claro.

130. But for the confusing and contradictory information conveyed by CICA as to its role in the debt collection process, Plaintiff would have known that CICA was not an intermediary, but rather, an adversary who worked solely for the benefit of Claro and Plaintiff would have taken steps, like disputing the debt in time, in accordance thereto.

131. Additionally, Plaintiff suffered intangible injuries. Amongst others, the confusion and contradiction created by misinformation as to the role it played in the debt collection process exposed Plaintiff to the specific risk of harm Congress intended to avoid.

132. Congress mandated that the Section 1692e(11) information be conveyed with the Initial Communication, so Plaintiff would understand from the outset the adversarial relationship of the debt collector and thus preserve in time Plaintiff's debt validation rights.

133. Congress mandated that the Section 1692e(11) information be conveyed with all subsequent communications so Plaintiff would, at all times, be informed as the adversarial relationship of the debt collector and thus preserve in time Plaintiff's rights.

134. CICA's violation of Section 1692e(11), by inducing Plaintiff onto believing that CICA could work for his benefit as an "intermediary" perfected the very harm which Congress specifically sought to avoid with Section 1692e(11).

135. As a result of CICA's conduct, Plaintiff is entitled to an award of statutory damages pursuant to *15 U.S.C. §1692k.*

136.    As a result of CICA's conduct, Plaintiff is entitled to an award of costs and attorney fees pursuant to *15 U.S.C. §1692k.*

## IX.    CLASS ALLEGATION

137.    Plaintiff re-alleges each and every previous allegation as if fully established herein.

138.    Plaintiff brings Count III and IV on behalf of a class of similarly situated persons, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

139.    The Class consists of: (a) all natural persons with a Puerto Rico address; (b) who were sent a letter in the forms represented by **Exhibit A**, (c) on or after a date one year prior to the filing of this action; and (d) on or before a date 20 days after the filing of this Complaint.

140.    The class members are so numerous that joinder is impracticable.

141.    On information and belief, based on the use of a form letter such as the one attached hereto as **Exhibit A**, there are more than 4,000 natural persons with a Puerto Rico address in the class defined herein.

142.    There are questions of law and fact common to all class members, which predominate over any question that affect only individual class members.

143.    The predominant questions are:

(a) Whether **Exhibit A** is a form letter.

(b) Whether **Exhibit A** violates the FDCPA; and

(c) The liability of Defendant CICA for the action of sending **Exhibit A**.

144.    Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

145.    Plaintiff will fairly and adequately represent the interest of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

146.    A class action is superior to other alternative methods of adjudicating this dispute, in that:

   a.  Individual cases are not economically feasible,

   b.  Many consumers may not realize their rights are violated, and

   c.  Congress prescribed class actions as a principal enforcement mechanism under the FDCPA.

**WHEREFORE**, in view of the foregoing, Plaintiff respectfully requests from this Honorable Court to enter a judgment in favor of the Plaintiff and the class members, granting Plaintiff and the class members the remedies requested in this Complaint and such other remedies as may be fair and equitable.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 18th day of October 2021.

**THE BATISTA LAW GROUP, PSC.**
P.O. Box 191059
San Juan, PR. 00919
Telephone: (787) 620-2856
Facsimile: (787) 777-1589

/s/ Jesus E. Batista Sánchez
Jesus E. Batista Sánchez, Esq.
USDC-PR No. 227014
E-mail:  jeb@batistasanchez.com

/s/ William Rivera Vélez
William Rivera Vélez, Esq.
USDC-PR No. 229408
 E-mail:  wrv@batistasanchez.com